**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DUANE PAULINO-ESCALERA | Criminal Action No. 20-63 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

 This matter comes before the Court on Defendant Duane Paulino-Escalera's ("Escalera") "Emergency" Motion for Compassionate Release under the First Step Act (the "Act"), 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (ECF No. 172.) The United States of America (the "Government") opposed (ECF No. 174) and Escalera replied (ECF No. 177).[1] Escalera also filed a motion for leave to file a sur-reply. (ECF No. 178.)[2] The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which applies to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court denies Escalera's Motion.

### I. BACKGROUND

 Escalera was convicted for his role in a Trenton-based drug trafficking ring that operated from June 2018 to May 2019. (PSR ¶ 23.) Law enforcement identified Escalera as the "principal

---

[1] Although Escalera filed his initial motion for compassionate release pro se (ECF No. 172), the Federal Public Defender's Office for the District of New Jersey submitted a reply on his behalf (ECF No. 177).

[2] The Court grants Escalera's motion for leave to file a pro se sur-reply and has considered its contents in reaching a decision on his compassionate release motion.

supplier of heroin" to the drug trafficking operation that distributed the illicit substances in and around Trenton. (*Id.* ¶ 35.) Police arrested Escalera on May 17, 2019, and, on January 22, 2020, Escalera accepted a plea agreement in which he pled guilty to a one-count Information charging him with conspiring to distribute, and possession with intent to distribute, "100 grams or more of a mixture or substance containing a detectable amount of heroin" in violation of 21 U.S.C. § 846. (Plea Agreement 1, 6, ECF No. 159.) To top it all off, Escalera committed the instant offense while on probation for a prior conviction. (PSR ¶ 124.)

On May 7, 2021, the Court sentenced Escalera to sixty months of imprisonment, the statutory minimum, followed by four years of supervised release. (J. *2-3, ECF No. 165.)[3] On October 13, 2021, Escalera surrendered himself to the Bureau of Prisons ("BOP") and began serving his sentence. (*See* ECF No. 169.) Thus, to date, he has served about one year of his five-year sentence. (*See* Gov't's Opp'n Br., Ex. A., ECF No. 174-1.) A little over two months after Escalera arrived at the prison, he filed with the BOP an administrative remedy request to modify his location of incarceration to home confinement. (Gov't's Opp'n Br., Ex. B., ECF No. 174-2.) The BOP promptly denied that request, finding that Escalera's "current medical condition and potential effect of COVID-19 . . . does not currently warrant an early release from [his] sentence or a designation to home confinement." (*Id.*) The BOP further posited that Escalera is likely safer residing at the U.S. Penitentiary Lewisburg, Pennsylvania ("USP Lewisburg"), which has prevailed in containing COVID-19 since February 2021, compared to Philadelphia, where there were more than 23,000 confirmed cases at the time. (*Id.*) Escalera appealed this decision and submitted a second request for home confinement, arguing that his comorbidities put him at a higher risk of death and hospitalization should he contract COVID-19. (Gov't's Opp'n Br. 4.) The

---

[3] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

USP Lewisburg warden initially approved that request, but the BOP ultimately struck it down as part of its internal review process. (*Id.*) So, Escalera filed a motion for compassionate release before this Court which is ripe for adjudication.

## II.     LEGAL STANDARD

A district court generally has limited authority to modify a federally imposed sentence once it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825-26 (2010). The Act, however, permits district courts to grant compassionate release where "extraordinary and compelling reasons" support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c). Under the Act, a district court may grant a compassionate release motion if it finds that a "sentence reduction is (1) warranted by extraordinary and compelling reasons; (2) consistent with applicable policy statements issued by the Sentencing Commission; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a) . . . ." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (internal quotations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)). District courts are not bound "by the Commission's policy statement" for defendant-filed compassionate release motions. *Id.* at 259. But the policy statement provides guidance, as it lists examples of medical conditions that may qualify as extraordinary and

compelling reasons. *See* U.S.S.G. § 1B1.13, cmt. N.1(A)(i) (reflecting that the standard is met if a defendant has a terminal illness, serious medical condition, or deteriorating health).

III.   **DISCUSSION**

At the outset, the Government does not contest that Escalera's Motion may be considered by the Court, as Escalera satisfied his administrative remedies requirement when the BOP denied his request to be transferred to home confinement. (Gov't Opp'n Br. 11-12 (regarding Escalera's request for home confinement to the BOP sufficient to satisfy exhaustion).) The Court thus turns directly to the merits of Escalera's Motion and addresses *first* whether he has demonstrated extraordinary and compelling reasons for release that are consistent with any applicable policy statements and, *second*, whether the 18 U.S.C. § 3553(a) factors support a reduction in sentence. *Last*, after conducting its compassionate release analysis, the Court addresses Escalera's alternative request for home confinement.

     **A.**     **Escalera Fails to Show Extraordinary and Compelling Reasons for Release.**

Escalera, now thirty years old, raises three related arguments in favor of finding extraordinary and compelling reasons in his case, all of which center on the risks posed by COVID-19. (*See generally* Def.'s Moving Br, ECF No. 172.) To start, Escalera avers that his significant comorbidities warrant compassionate release from his sixty-month term of imprisonment. (*See id.* at 5.) He claims that despite being vaccinated for COVID-19 (and having received a booster shot), his medical conditions—asthma, diabetes, depression, obesity, sleep apnea, and hypertension— increase his risk of severe illness from the virus.[4] (Def.'s Moving Br. 4, Def.'s Reply Br. 2.) Next,

---

[4] The CDC does not recognize sleep apnea or use of a C-PAP machine as medical conditions that increase the risk of severe illness from COVID-19. *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 16, 2022).

Escalera complements his initial argument by insisting that the conditions at USP Lewisburg overexpose him to the virus because of the lack of social distancing and the poorly ventilated indoor spaces. (Def.'s Reply Br. 3.) Third, Escalera emphasizes that the vaccine does not protect him from the long-term consequences of COVID-19 and, further, that his booster shot protection wanes over time. (*Id.* at 2.) Putting it all together, Escalera declares that he presents extraordinary and compelling reasons warranting a reduction in sentence.

Unsurprisingly, the Government disagrees. (*See generally* Gov't's Opp'n Br.) It argues that Escalera fails to make the requisite showing for a reduction in sentence because he is vaccinated against the virus and his conditions are adequately managed by the BOP. (*Id.* at 13, 15.) Simply put, the Government denies that Escalera's health risks rise to the level of extraordinary and compelling, particularly when considering his vaccination status and lack of evidence that USP Lewisburg is amplifying the risk that Escalera contracts COVID-19. (*See generally* Gov't's Opp'n Br.)

Section 3582(c) does not define what constitutes "extraordinary and compelling reasons," so courts routinely look to the U.S. Sentencing Commission's policy statement governing sentence reductions. *United States v. Moe*, 571 F. Supp. 3d 267, 270 (D.N.J. 2021). Although the policy statement is not binding, it serves as a guide to help decipher the "extraordinary and compelling" language within the statute. *Andrews*, 12 F.4th at 260 ("[A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons."). Under that policy statement, a defendant meets the standard on health-related grounds if he suffers from a terminal illness or if the defendant is:

> (I)   suffering from a serious physical or medical condition,
> (II)  suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of
>        the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(i)-(ii). Subsection (D) of the Application Note to § 1B1.13, the catch-all provision, examines "extraordinary and compelling reason[s] other than, or in combination with," the other three categories. *Id.* cmt. n.1(D).

At this stage of the COVID-19 pandemic, numerous courts have addressed compassionate release motions premised on the risk of contracting the virus. *E.g.*, *United States v. Cottle*, No. 18-113, 2022 WL 1963658, at *3-4 (D.N.J. June 6, 2022) (addressing and denying a defendant's COVID-19-related compassionate release motion). It is settled that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Equally clear is that a defendant's vaccination status does not automatically preclude a sentence reduction, but courts do consider it. *See, e.g.*, *United States v. Thomas*, No. 21-2105, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (affirming the district court's denial of compassionate release partially because the defendant's vaccination reduced health risks from the virus).

In evaluating Escalera's proffered reasons, the Court finds that he fails to present extraordinary and compelling circumstances. For starters, to date, less than one percent of incarcerated individuals at USP Lewisburg are currently positive for COVID-19.[5] *United States v. Batista*, No. 18-415, 2020 WL 4500044, at *3 (D.N.J. Aug. 5, 2020) (denying compassionate release where the facility reported only a single positive case of COVID-19); *United States v. Jefferson*, No. 21-2020, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021). What's more, Escalera

---

[5] *See* https://www.bop.gov/coronavirus/; https://www.bop.gov/locations/institutions/lew/.

has neither tested positive for the virus nor demonstrated any symptoms since his arrival at USP Lewisburg in October 2021. (Gov't Opp'n Br. 21-22.) Given USP Lewisburg's control over containing COVID-19 and the lack of evidence that the BOP is dilatory in its duties to protect individuals housed at this facility, the Court determines this factor weighs against finding extraordinary and compelling reasons. *See United States v. Battle*, No. 21-2151, 2021 WL 4550925, at *2 (3d Cir. Oct. 5, 2021) (affirming district court's finding that defendant's hypertension and asthma did not equate to "extraordinary and compelling reasons" "where infection rates were near zero" at the facility and he was fully vaccinated).

To be sure, even if USP Lewisburg did have several active COVID-19 cases, Escalera fails to explain why he remains at risk of severe illness or death as a fully vaccinated and boosted individual. *See, e.g.*, *United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir. 2020) (per curiam) ("[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid . . . that sentence."); *United States v. Hannigan*, No. 19-373, 2021 WL 1599707, at *2, *6 (E.D. Pa. Apr. 22, 2021) (denying compassionate release for a defendant who had diabetes, hypertension, and sleep apnea because his risk of serious illness after the COVID-19 vaccination was "significantly reduced"); *United States v. Watkins*, No. 04-309, 2021 WL 1627765, at *1-2 (W.D. Pa. Apr. 27, 2021) (concluding that the COVID-19 vaccine meaningfully protected the defendant, who suffered from obesity and hypertension, and thus he failed to show extraordinary and compelling reasons for release). Escalera, barely entering his thirties, is "significantly less likely to require

hospitalization or die from a COVID-19 infection than adults aged sixty-five" or older.[6]  *United States v. Powell*, No. 08-592, 2021 WL 4272759, at *4 (D.N.J. Sept. 21, 2021). Thus, the remaining risks to Escalera simply are not extraordinary and compelling.[7] *See United States v. Moye*, No. 16-cr-250, 2020 WL 6273905, at *2 (S.D.N.Y. Oct. 26, 2020) (finding that a defendant with diabetes, hypertension, and asthma failed to present extraordinary and compelling reasons in fearing COVID-19).

**B.    The § 3553(a) Factors Do Not Weigh in Favor of Granting Escalera Compassionate Release.**

To be sure, even if Escalera demonstrated "extraordinary and compelling reasons," the § 3553(a) factors that the Court must consider would still undermine his release.[8] Escalera contends that the § 3553(a) factors weigh in his favor because he is not a danger to the community, he has already served time in prison, and he has been productive while incarcerated. (Def.'s

---

[6] Although Escalera's concerns about long-lasting COVID-19 symptoms are not baseless, he fails to crystalize how his particular medical conditions place him at a heightened risk of "long COVID" compared to the general population. *See United States v. Reiter*, No. 87-132, 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) (citing Pam Belluck, THEY HAD MILD COVID. THEN THEIR SERIOUS SYMPTOMS KICKED IN, N.Y. Times (Mar. 23, 2021), https://www.nytimes.com/2021/03/23/health/long-covid-symptoms.html (describing long-term effects of COVID-19)).

[7] The Court finds inapposite Escalera's list of case law that predates the availability of COVID-19 vaccines. (Def.'s Moving Br. 6-8 (citing, among others, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020); *United States v. Delgado*, 457 F. Supp. 3d 85, 91-92 (D. Conn. 2020)).)

[8] The § 3553(a) sentencing factors are (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges established for the defendant's crimes; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Moving Br. 8-11.) The Government counters that Escalera has served a "woefully inadequate" period of incarceration for a serious narcotics offense—less than 20% of his sentence—and thus the Section 3553(a) factors independently warrant denying Escalera's motion. (Gov't's Opp'n Br. 10, 22.)

On balance, the Court finds that the relevant considerations weigh against reducing Escalera's sentence. Escalera distributed massive quantities of heroin in New Jersey over the course of several months, a serious offense considering the ongoing drug epidemic in this state. (*See* PSR ¶¶ 32-37, 40, 85-86; 18 U.S.C. § 3553(a)(1).) Reducing his sentence to one year would stray far afield from reflecting the seriousness of the offense, protecting the public, or affording adequate deterrence to illicit drug activities.[9] 18 U.S.C. § 3553(a)(2); *cf. United States v. Edwards*, No. 19-266, 2021 WL 2903074, at *3 (E.D. Pa. July 9, 2021) (denying compassionate release to a defendant who served 67% of his sentence because he endangered his community by selling drugs); *see also United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020) (holding that courts can take into account time remaining to be served when considering compassionate release). It would also generate an unwarranted disparity with other defendants convicted of similar offenses, many of whom are serving decades-long sentences. *See* 18 U.S.C. § 3553(a)(2). Finally, the Court is concerned that Escalera's brief stay in federal prison accomplished little by way of rehabilitating him, enhancing the chance of recidivism. (Def.'s Moving Br., Ex. E (BOP identifying a "medium risk" of recidivism); *see United States v. Brinson*, No. 15-87, 2020 WL

---

[9] Escalera is mistaken that the time he spent out on bail, prior to his sentencing, counts towards his time served. *See United States v. Piper*, 525 F. App'x 205, 210 (3d Cir. 2013) ("Since defendant was not subject to official detention prior to sentencing, his home detention as a condition of bail cannot be credited as time served."); 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences." (emphasis added)).

4736258, at *4 n.6 (W.D. Pa. Aug. 14, 2020) (expressing concern over the chances of recidivism for a twenty-eight-year-old defendant with heroin charges).) In general, Escalera fails to identify sentencing factors that support a reduction in sentence, nor can the Court identify any. So, the Court separately finds that a reduction in sentence is unwarranted under the sentencing factors.

### C.   The Court Lacks Authority to Grant Home Confinement.

In a last-ditch effort, Escalera asks the Court to transfer him to home confinement. (Def.'s Moving Br. 10.) The Court need not spill much ink on this request. The Act allows courts to grant compassionate release and reduce a sentence; no federal statute (including the CARES Act) grants district courts the power to order the BOP to transfer an incarcerated individual to home confinement. *United States v. Calabretta*, No. 12-131, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020) ("The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP."); *Batista*, 2020 WL 4500044, at *4 ("An application for home confinement is distinct from a motion to reduce the term of imprisonment under Section 3582(c), which does not authorize the Court to dictate the place of confinement."). The Court therefore denies this request. As to Escalera's contention that the Court may grant his request for home confinement by "convert[ing] [his sentence to] a term of supervision" (Def.'s Reply Br. 5), this is just another way of asking the Court to reduce Escalera's sentence under § 3582(c)—an invitation the Court declines.

## IV.   <u>CONCLUSION</u>

For the above reasons, Escalera's Emergency Motion for Compassionate Release is denied. An appropriate order will follow this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE